UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRICK L. SMITH,

                      Plaintiff,

v.                                                 Case No. 23-cv-841-pp

RANDALL HEPP
and WAUPUN PRISON,

                      Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 6) AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

      On July 19, 2023, the court issued an order denying plaintiff Derrick L. Smith's motion for leave to proceed without prepaying the filing fee because the plaintiff "has had far more than three strikes assessed to him over the years," and the court found that his complaint did not allege that he was in imminent danger of serious physical injury. Dkt. No. 5 at 2–3; see 28 U.S.C. §1915(g). The court summarized the facts in the complaint, which alleges that officials at Waupun Correctional Institution failed to address issues with the drinking water. Dkt. No. 5 at 3. The court noted that the plaintiff had been at five correctional facilities (including Waupun) and a supervised living facility since 2014, which meant that the plaintiff's mild physical symptoms might be "the result of another condition unrelated to Waupun, its water or his incarceration there." Id. The court also found that the complaint failed to "suggest that the water at Waupun [was] placing the plaintiff in *imminent* danger of *serious* physical injury." Id. It alleged only that the plaintiff *may* be in danger of *some* physical ailment, which is insufficient for him to proceed under §1915(g). Id. The court concluded that the "allegations of contaminated water are vague, and

the alleged risk to the plaintiff's health is remote and speculative." Id. The court ordered that if the plaintiff "wishes to proceed with this case, the plaintiff must prepay the full $402 filing fee" by August 11, 2023. Id. at 4.

The August 11, 2023 deadline has passed, and the court has not received the $402 filing fee. On August 2, 2023, the court received from the plaintiff a motion for reconsideration, dkt. no. 6, and an "Imminent Danger Affidavit and Declaration," to which he attached forty-three pages of exhibits, dkt. no. 7. The court will deny the motion for the reasons explained in this order and dismiss the complaint for the reasons explained in the previous order.

## I. The Plaintiff's Motion and Attachments (Dkt. Nos. 6, 7)

In his motion for reconsideration, the plaintiff asserts that the allegations in his complaint were vague "because he was and still is in tremendous, unbearable pain," which "cause[d] him to not submit his affidavit and declaration to support his complaint in a timely matter." Dkt. No. 6 at ¶4. He says his consumption of the allegedly contaminated water, coupled with a months-long lockdown at Waupun, "contributed to [his] inability to submit supporting facts in a timely matter." Id. at ¶5. He also asserts that he spent five years working "in the medical field," which he says "makes him a layperson in that field." Id. at ¶6. He insists that he described his symptoms as best he could given his "work medical experience," and he says he kept his allegations general and short because he had only "limited space provided . . . in that Clerk of Court provided civil rights form." Id. at ¶7.

The plaintiff's "Imminent Danger Affidavit [and] Declaration" summarizes the exhibits attached to that document. Dkt. No. 7. The plaintiff asserts on the final page that the alleged risk to his health from the allegedly contaminated

water "is not only imminent it is continual." Id. at 10. He says the exhibits show he has been complaining "about these very same medical issues since 2014." Id. He alleges that he continues to experience "'unbearable' pain." Id. He reiterates his requests for an "emergency temporary/preliminary injunction moving him" to Mendota Mental Health Institution in Madison, for court-appointed counsel to assist him in this lawsuit and for "[t]otal medical/doctor/specialist to address his complained of serious medical issues." Id.

The exhibits attached to the plaintiff's affidavit include a document labeled "Important Information about your Drinking Water." Dkt. No. 7-1 at 1. This document, which Waupun Deputy Warden Emily Propson signed and dated June 21, 2023, notes that water samples collected from Waupun and other Wisconsin prisons between August 2022 and April 2023 showed elevated levels of radium. Id. Deputy Warden Propson explains that the samples showed levels of radium 226 and 228 above the "Maximum Containment Level (MCL) of 5 pCi/L, "which is a violation of State and Federal Safe Drinking Water standards." Id. The notice says that persons at Waupun "do **not** need to use an alternative (e.g., bottled) water supply." Id. Under the heading titled, "What does this mean?" the notice says, "This is not an immediate risk. If it had been, you would have been notified immediately." Id. But it does note that "[s]ome people who drink water containing combined radium 226 or 228 in excess of the MCL over many years may have an increased risk of getting cancer." Id. There also is a heading titled, "What is being done to correct the problem?" Id. The response notes, "The Department of Corrections (DOC) is currently working with the Department of Administration (DOA) to design a building

3

project for a water treatment plant to service the four identified sites above." Id. It says that the DOC will provide notice "when the problem is resolved." Id.

The plaintiff also attached a printout from the Environmental Working Group website, which says that samples of drinking water at Waupun taken between 2014 through 2019 contained twenty contaminants, nine of which "exceed EWG health guidelines." Id. at 10–17. The pages list some of the purported contaminants, which range from 3.9 to 90 times above "EWG's Health Guideline." Id. A notation in the upper lefthand corner of these pages shows they were printed on April 27, 2023 at 9:57 p.m. Id. Following this printout is the plaintiff's handwritten summary of the report. Id. at 18. The plaintiff then attached a memorandum from Sarah Cooper, Administrator of the Division of Adult Institutions (DAI) in Wisconsin. Id. at 19–21. This memorandum was sent to all staff, incarcerated persons and visitors at Waupun and three other correctional facilities. Id. at 19. The memorandum explains the testing of water at the facilities, notifies the reader of the slight elevation in radium levels and notes that "the radium presence [in the water samples] does not pose an immediate risk and alternative water supply is NOT necessary." Id. Cooper reiterates that, according to the Wisconsin Department of Natural Resources, which performed the water testing, "drinking water at the affected facilities does not pose an immediate health risk, and the facilities DO NOT need to use alternative water supplies." Id. at 21.

The plaintiff also attached several requests for health services that he filed and the responses he received, which date from February to July 2023. Id. at 2–8, 24–33, 43. Some of these documents are duplicates. He also attached documents related to an institutional complaint that he filed in June 2023 about the drinking water. Id. at 34–42. An institutional complaint examiner

rejected the complaint because the plaintiff previously had raised the same issue. Id. at 37. His appeal was rejected for the same reason. Id. at 39. The plaintiff also attached a memorandum from Deputy Warden Propson responding to a letter the plaintiff sent "describing concerns of the water quality at Waupun." Id. at 22. Propson reiterates that the DNR "has determined that the drinking water does not pose an immediate health risk and [Waupun] does not need to use alternative water supplies." Id. She notes that the plaintiff may purchase alternate water from the canteen. Id.

## II.  Analysis

The plaintiff has not stated a legal basis for his motion asking the court to reconsider its previous decision denying his request for leave to proceed without prepaying the filing fee. The court will construe his motion as if he had brought it under Federal Rule of Civil Procedure 54(b), which provides, in part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Motions for reconsideration serve a limited function. They allow the court to correct manifest errors of law or fact or the plaintiff to present newly discovered evidence that was not available before the court ruled. Caisse Nationale de Credit v. CBI Industries, 90 F.3d 1264, 1269 (7th Cir. 1996). They are not a vehicle for losing parties to reargue issues decided against them. Id. at 1270. A "manifest error of law" "is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606

(7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Many of the exhibits the plaintiff attached to his declaration were available before the court issued the previous order and predate the court's order by several months. The plaintiff says he did not include the declarations and exhibits with his complaint because of his medical conditions and a lockdown at Waupun. But nothing he filed suggests that he was incapable of including his declaration or supplemental information with his complaint. The printout the plaintiff attached from the EWG website was dated April 27, 2023—nearly two months before he signed his complaint on June 9, 2023. That suggests the plaintiff already had the EWG information about Waupun's water quality in his possession and simply failed to include it or chose not to. The plaintiff attached a "cover letter" to his complaint. Dkt. No. 1-1. He does not explain why he was able to attach that extra page but could not also attach his declaration or exhibits detailing his claim. The plaintiff alternatively could have told the court *in his complaint* that the complaint form he received did not provide him sufficient space to better explain his claim or that he had additional information he wanted to submit but was not yet able to file with the court. He could have requested additional time to supplement his complaint or file the affidavit, or he could have waited until he had the additional information before filing his complaint and the additional information. That the plaintiff was able to file his lengthy supplemental documents not even two weeks after the court issued its order denying his motion to proceed without prepaying the filing fee (well ahead of the August 11, 2023 deadline) suggests that it was the plaintiff's decision not to file those additional documents, rather than that any external factor kept him from timely filing them.

The court also notes that in the plaintiff's numerous previous cases, he has had no issue thoroughly explaining his allegations and claims in his complaints and in additional motions and requests filed with the court. See, e.g., Case No. 18-cv-1030-WED (E.D. Wis.), Dkt. No. 95 at 1–2 (summarizing the plaintiff's filings, which included four motions "for emergency injunctive relief"; two amended complaints; and motions for reconsideration of the court's earlier rulings, to clarify, to extend the time to file a second amended complaint and for injunctive relief). In the last case he filed before filing this one, the plaintiff filed a complaint with fourteen pages of attached exhibits, an eight-page affidavit with seventeen pages of attached exhibits, a ten-page motion for "emergency preliminary judicial intervention" with twenty-two pages of attached exhibits and two additional motions. See Case No. 21-cv-1313-WED. It strains credulity to believe that the plaintiff was able to file his complaint and cover letter in this case but that he could not also file affidavits and documents bolstering his claims, especially given that the plaintiff has since filed two motions with attached exhibits and an affidavit with over forty attached pages in support without any apparent or purported issue.

Some of the attached documents contain new information that was not available when the plaintiff filed his compliant. The water report from Deputy Warden Propson is dated June 21, 2023, which is approximately two weeks after the plaintiff signed his complaint (but two days before the court received it). Dkt. No. 7-1 at 1. The memorandum from DAI Administrator Cooper similarly is dated June 19, 2023. Id. at 19. But this information *was* available between June 23, 2023 (when the court received the complaint) and July 19, 2023 (when the court issued the previous order). That means the plaintiff could have amended or supplemented his complaint with this additional information

*before the court ruled* on his motion for leave to proceed without prepaying the filing fee, even if he could not have filed it with his complaint.

Even if the court were to accept the plaintiff's supplemental affidavit and exhibits, the new information he provides does not change the court's conclusion that the plaintiff has failed to demonstrate that he is in imminent danger of serious physical injury. The documents he attached from the prison bolster the court's finding that the plaintiff's allegations about his drinking water allege only a possible, remote risk to his health—not an imminent, proximate and real risk for which judicial intervention is warranted. The water report from Deputy Warden Propson notes that although elevated levels of radium were found in samples taken from Waupun, the risk to the health of those consuming the water (which includes staff and incarcerated persons) is not an immediate risk. It explains that *some* people who consume water with elevated radium levels *for many years may* have an increased risk of developing cancer. Dkt. No. 7-1 at 1 (italics added). The memorandum from Cooper says much the same. This new information corroborates the court's conclusion that the risk to the plaintiff from consuming the water is one that may "never come to pass or turn out not to be serious." Sanders v. Melvin, 873 F.3d 957, 960 (7th Cir. 2017). It is not an imminent risk for which the plaintiff may proceed *in forma pauperis* despite his many strikes.

The court will deny the plaintiff's motion to reconsider its previous order. Because the plaintiff has not paid the full $402 filing fee, the court will enforce its previous order and dismiss the complaint without prejudice.

The court also notes that on August 28, 2023, the court received a motion "inquiring if this court received [the plaintiff's] supporting documents." Dkt. No. 8. The clerk's office sent the plaintiff a copy of the electronic docket

showing that the court did receive the plaintiff's motion and supporting documents. Because this filing is not a motion but is instead a request for information that the court has since provide to the plaintiff, the court will not take any further action on this filing.

### III. Conclusion

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 6.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** for failure to pay the $402 filing fee. Dkt. No. 1. The clerk will enter judgment accordingly.

The court **ORDERS** that, in accordance with 28 U.S.C. §1915(b)(1), the plaintiff must pay the mandatory **$350** statutory filing fee. The agency that has custody of the plaintiff must collect from his institution trust account the $350 filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

Dated in Milwaukee, Wisconsin this 7th day of September, 2023.

BY THE COURT:

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**